UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:24-CV-00613-CRS

TSF THOROUGHBRED RACING, LLC, *et al* PLAINTIFFS

v.

CREECH HORSE TRANSPORTATION, INC., *et al* DEFENDANTS

**MEMORANDUM OPINION**

This action arises from the death of three and the serious injury to four thoroughbred horses. The horses were killed and injured in a single vehicle accident which occurred enroute to Keeneland in Lexington, Kentucky from New Orleans, Louisiana. The plaintiffs to this action are owners or part owners of the horses, with one exception. The exception is Kenneally Racing Stable, LLC ("Kenneally Racing"). It was the horses' trainer. It was also "the shipper-representative," *i.e.*, the entity who "organized the interstate transport" of the horses.[1] According to Kenneally Racing, as a result of the horses' deaths and injuries, it lost training fees and profits as well as lost commissions from sales and racing purses.[2] Kenneally Racing has sued Creech Transportation, Inc. the carrier and its driver Guy Landmeier to recover those losses.

Kenneally Racing's claims are now before the Court on Defendants' Motion for Summary Judgment. Defendants maintain that Kenneally Racing cannot proceed because it must have but does not have the right to sue under the Carmack Amendment to the Interstate Commerce Act. That is, according to Defendants, Kenneally Racing lacks statutory standing. The Carmack Amendment provides an exclusive remedy for shippers, *i.e.*, a party entitled to recover under a bill of lading, whose cargo is lost or damaged by a carrier during interstate transport. Kenneally Racing argues that the Carmack Amendment does not apply because there is no underlying enforceable

[1] Kenneally Racing's Response brief, DN 133, at PageID# 1501 & 1499, respectively.
[2] *Id.* at PageID# 1508-09.

bill of lading. In the alternative, Kenneally Racing argues that if the Court were to find that an enforceable bill of lading exists, Kenneally Racing was a party to it and, thus, would have standing to bring a Carmack Amendment claim. In reply, Defendants contend that whether a bill of lading exists does not matter. They point to this language of the Carmack Amendment: "'failure to issue a receipt or bill of lading does not affect the liability of the carrier.'"[3]. Defendants otherwise maintain that absent an ownership interest in the horses, Kenneally Racing does not have the necessary statutory standing to bring a Carmack Amendment claim.

The Court agrees that Kenneally Racing cannot bring a claim under the Carmack Amendment. Thus, to the extent that Kenneally Racing has attempted to bring such a claim or argues that it has one, Defendants are entitled to a summary judgment on such a claim. At the same time, it is unclear to the Court whether Kenneally Racing may have a different, viable theory of liability. While Kenneally Racing is outside the zone of interests protected by the Carmack Amendment, the parties' briefs do not squarely address whether Kenneally Racing may nonetheless recover the damages it seeks pursuant to a different theory of liability. The Court notes that in addition to the instant summary judgment motion, the parties have recently filed cross-motions for summary judgment. As well, there is a pending motion for a judgment on the pleadings. Those motions may resolve this outstanding query but the cross-motions for summary judgment are not yet fully briefed. Given these circumstances, at this juncture, the Court will grant Defendants' summary judgment motion to the extent Kenneally Racing maintains that it has a Carmack Amendment claim but it will not dismiss Kenneally Racing from this action.

## **BACKGROUND AND PROCEDURAL HISTORY**

Kenneally Racing, along with its co-plaintiffs initiated this action by filing a Complaint in the Circuit Court for Nelson County, Kentucky. The Complaint pleaded claims pursuant to

---

[3] Reply, DN 135, at PageID# 1709 (quoting 49 U.S.C. § 14706(a)(1)).

Kentucky law. Nonetheless, Defendants removed the action to this Court on the ground that the state law claims were preempted by the Carmack Amendment. Notice of Removal, DN 1 at ¶ 9. The Notice does not distinguish the horse-owner plaintiffs from non-owner-plaintiff Kenneally Racing. Yet, the Notice acknowledges that the Carmack Amendment provides "exclusive remedies ***for shippers*** whose goods are damaged in interstate transport . . . ." *Id.* at ¶ 13 (emphasis added). Like the Notice of Removal, the Complaint does not differentiate, as clearly as it might have, Kenneally Racing's claims from those of the co-plaintiff horse owners. For example, the Complaint describes "The Nature of Action" as follows: "This Complaint arises from the negligence, fraud and gross breaches and derelictions of duties of Defendants in connection with and during the transport ***of Plaintiffs' collective racehorses*** . . . ." Complaint, DN 1-1, at PageID# 11 (emphasis added).

Nevertheless, the Complaint also makes clear that Kenneally Racing "was the trainer of the racehorses," not an owner of them. *Id.* at ¶¶ 11, 16. It also makes clear that Kenneally Racing arranged for the horses' transport by Defendants. *Id.* at ¶ 17. Consistent with these allegations, Kenneally Racing acknowledged that it was acting on the authority of the co-plaintiff owners:

> **<u>REQUEST NO. 2</u>:** Admit Kenneally Racing Stable, LLC had, before the shipment in issue, each other Plaintiffs' [sic] authority to arrange for the transportation of their horses involved in the shipment in issue.
>
> **<u>RESPONSE:</u> Admit.**

Exh. 1 to Motion, DN 128-2 at PageID# 1404-05. Additionally, the Complaint alleges that in connection with the transportation arrangements, Defendants made misrepresentations as to the fitness of Creech's driver, defendant Landmeier. *Id.* at ¶¶ 18, 24. And it alleges that "Plaintiffs were fraudulently induced to believe" that Landmeier was fit to drive. *Id.* at ¶ 24. At the same time, the Complaint alleges that the accident was caused by Defendants' negligence and Landmeier's having had driven for too many hours without sufficient rest. *Id.* at ¶¶ 21-22.

Based on these allegations, the Complaint sets out four theories of liability: (1) negligence (2) fraudulent inducement and/or misrepresentation, (3) negligent misrepresentation and (4) breach of contract. *Id.* at ¶¶ 25-43. The Complaint also includes a count for punitive damages. *Id.* at ¶¶ 44-47. The Complaint states that together the plaintiffs are seeking "compensatory damages in an amount of not less than three million dollars" and "punitive damages in an amount to be determined by the trier of fact." *Id.* at PageID# 19-20, ¶¶ 1-2. The plaintiffs filed their Complaint on September 30, 2024. *Id.* at PageID# 10. On October 23, 2024, based on the contention that the plaintiffs' claims are preempted by the Carmack Amendment, Defendants removed the action to this Court. Notice of Removal, DN 1, at PageID# 1-8.

Since the action was removed, the parties have participated in lengthy discovery. Indeed, after nearly fifteen months of litigation, the parties asked for extended deadlines based on the "the number of depositions; thousands of pages of financial records from eleven (11) Plaintiffs, some not yet received and thus not reviewed and needed to be reviewed by expert(s); and other outstanding discovery, professional and party circumstances and conflicts." 01/16/26 Joint Status Report, DN 142 at PageID# 1737. The Court granted those extensions of time and granted more time to file dispositive motions upon the parties' agreement to push the deadline to August 31, 2026. *See* 06/29/26 Joint Status Report, DN 163 and 07/02/26 Amended Scheduling Order, DN 164. Following that Order, Defendants filed a Motion for a Judgment on the Pleadings. Thereafter, on the new deadline of August 31, 2026, both sides filed summary judgment motions which have yet to be fully briefed. In the meantime, the instant summary judgment motion—filed while the parties were still engaged in extensive discovery—remained pending. The Court turns its attention to that motion now.

## ANALYSIS

The question presented by Defendants' summary judgment motion is whether Kenneally Racing has the requisite statutory standing to bring a claim pursuant to the Carmack Amendment, *i.e.,* whether it falls within the class of plaintiffs whom Congress authorized to sue under that law. Based on its pleading and arguments, it is not clear to the Court that Kenneally Racing is pursuing a Carmack Amendment claim. However, Defendant's Motion raises the issue and Kenneally Racing has argued that if the Court were to find that the Carmack Amendment applied, it could maintain a claim under it. Thus, the Court turns its attention to the parties' Carmack-Amendment arguments.

**A. The Parties' Arguments**

According to Defendants, the Carmack Amendment provides a cause of action only to cargo owners whose property is destroyed or damaged during interstate transportation. Thus, given that Kenneally Racing did not (and does not now) own any part of the killed or injured horses, the Carmack Amendment does not provide it with a cause of action:

> The shippers entitled to recover under the bill of lading are the owners of the goods being shipped, not the agent arranging transport. As a party that is not a shipper, Kenneally Racing cannot possibly be considered to have statutory standing in this action.

Mem. of Law, DN 128-1, at PageID# 1398-99.[4] Defendants have also drawn attention to a bill of lading that is at issue in this case, apparently in anticipation of an argument from Kenneally Racing that it obtained statutory standing by signing it. Defendants assert that while "Kenneally Racing is listed on the bill of lading as the 'shipper,' this is in its capacity as agent for the owners of the

[4] The Court calls the parties' attention to LR 7.1 which governs motion practice. The Rule does not authorize filing a separate memorandum of law. Instead, LR 7.1 authorizes a single document which must "state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it." LR 7.1(a). Motions are limited to twenty-five pages. LR 7.1(d). In addition to not being authorized by the Rule, a separate memorandum of law may result in a violation of the twenty-five page limit. That is not the case with respect to the instant motion. Nonetheless, the Court advises the parties that they are expected to comply with LR 7.1 with respect to future filings.

horses, not as an owner itself." *Id.* at PageID# 1398. They point to Kenneally Racing's admission that it arranged for the horses' transportation as a result of the owners having granted it the authority to do so. *Id.* (citing Responses to Requests for Admissions). Lastly, Defendants contend that Kenneally Racing does not have Article III standing because it is not entitled to recover under a bill of lading and because it did not "suffer a direct, concrete loss from the injury to or death of the horses." *Id.* at PageID# 1399.[5]

In response, Kenneally Racing does not contend that it possessed an ownership interest in any of the horses. Nor does it point to any record evidence which shows that it acted in any capacity other than as the agent for the horses' owners. Instead, Kenneally Racing's Response reaffirms that it acted agent for the horses' owners:

> On March 24, 2024, Kenneally Racing . . . with express authorization of the horse owners, and in the ordinary course of Kenneally Racing's racing and training operations, organized the interstate transport of a group of thoroughbred races under Kenneally Racing's care, custody and control . . . .

Response, DN 133, at PageID# 1498. Kenneally Racing also stated that its employee completed the paperwork for the horses' transportation and through that "agency," Kenneally Racing was the shipper-***representative*** . . . ." *Id.* at PageID# 1501 (emphasis added). At the same time, Kenneally Racing maintains that its role as agent is not dispositive because there is no binding shipping contract that would give rise to a Carmack Amendment claim. Response, DN 133, at PageID# 1504.

---

[5] Defendants suggest that Article III standing does not apply in this case. Mem. of Law, DN 128-1, at PageID# 1399 ("Even if Article III standing were applicable here . . . "). That contention is incorrect. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016) (Article III standing must exist in cases premised on a statutory right to sue); *see also Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) ("Whether petitioner has asserted a cause of action...depends not on the quality or extent of her injury," as does the inquiry under Article III standing, "but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue").

More specifically, Kenneally Racing contends that there is no shipping contract because there is no enforceable bill of lading. According to Kenneally Racing, while it signed a bill of lading, that bill was rendered unenforceable because Creech unilaterally altered its terms. *Id.* at PageID# 1503-04. Kenneally Racing also acknowledges that a second bill of lading exists but claims that it never signed that bill, rendering it unenforceable too. *Id.* at PageID# 1504. In addition to those fatal flaws, Kenneally Racing argues that Defendants' fraud-in-inducement—the misrepresentations as to Landmeier's fitness to drive—also renders the bills unenforceable. *Id.* at PageID# 1504-05. Thus, according to Kenneally Racing, "neither bill of lading can bind the parties" such that "the Court need not address statutory standing under the Carmack Amendment." *Id.* at PageID# 1505.

Next, Kenneally Racing argues that should the Court find an enforceable bill of lading, then it would have standing to bring a Carmack Amendment claim because as the signatory, it falls within that form's definition of "shipper." *Id.* at PageID# 1506-07. Finally, Kenneally Racing contends that contrary to Defendants' argument it has sustained a direct injury as a result of their conduct: lost training revenue and lost commissions from sales and racing purses which means that in addition to having statutory standing to pursue a Carmack Amendment claim, it also has standing under Article III of the Constitution. *Id.* at PageID# 1507-08.

**B. The Carmack Amendment, the Undisputed Record and Unanswered Issues**

"The Carmack Amendment, enacted in 1906 as an amendment to the Interstate Commerce Act . . . created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. So. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). "The purpose of the Carmack Amendment is provide a remedy, 'where a ***shipper*** whose cargo is lost or damaged by ***a carrier*** may recover damages for that loss.'" *Great West Cas. Co. v. Flandrich*, 605 F. Supp.2d 955, 964 (S.D. Ohio 2009) (emphasis in original) (citation omitted). As

such, the Carmack Amendment comprises a legislatively conferred cause of action. Such causes of action permit claims only by "plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). The Sixth Circuit Court of Appeals has held that "[n]othing in the Carmack Amendment suggests that Congress . . . intended to protect the broker-carrier relationship by granting brokers a direct right to sue under the statute." *Exel, Inc.,* 807 F.3d at 148–49 (citations omitted).

The undisputed record shows that Kenneally Racing was not a "shipper" in the sense that it did not own the horses (the cargo) that Creech (the carrier) was transporting. The Complaint alleges that as the horses' trainer, Kenneally Racing "entrusted" Defendants with their care in transporting them. Complaint, DN 1-1, at ¶¶ 11, 16, 17. These allegations plausibly infer that Kenneally Racing was the owners' agent. Also, and notably, Kenneally Racing admitted that it acted as the owners' agent. Response to Request for Admission No. 2, Exh. 1 to Motion, DN 128-2 at PageID# 1404-05. And, Kenneally Racing has described itself as the "shipper-representative." Response, DN 133, at PageID# 1501. Further, Kenneally Racing's Response explains that its role was as agent to the owners: "with express authorization of the horse owners, and in the ordinary course of Kenneally Racing's racing and training operations, [it] organized the interstate transport of a group of thoroughbred racehorses . . . ." *Id.* at PageID# 1498. Moreover, Kenneally Racing' alleged damages do not consist of the value of the deceased horses or the losses to the values of the injured horses. Instead, its damages consist of lost training revenue and commissions. Response, DN 133, at PageID# 1508-09. That is, Kenneally Racing does not occupy the position of shipper/owner who seeks to recover the value of cargo lost or damaged during interstate transportation. Instead, its position is akin to a transportation broker, and as such, it does not have a direct cause of action under the Carmack Amendment. *Exel, Inc.,* 807 F.3d at 148–49.

Kenneally Racing's arguments to the contrary are unavailing. First, the language of the disputed bills of lading on which Kenneally Racing relies does not help it. Kenneally Racing contends that the signatory to the form bills of lading used by Creech is necessarily a party to that contract. It relies on this language for that proposition: "It is mutually agreed as to the parties hereto, all Beneficial Owners of the property identified herein and all Carriers handling this Shipment or any part thereof. . . ."[6] Response, DN 133, at PageID# 1506. This language does not define "shipper," contrary to Kenneally Racing's contention. Additionally, Kenneally Racing's argument overlooks this form language: "The agreed value of the property is hereby specifically stated by the shipper individually ***or by shipper's agent signing on on shipper's behalf*** . . . ." *Id.* (original, all-caps font omitted) (bolding and italics added). The form expressly acknowledges that it may be executed not by the shipper itself but by its agent. Third, Kenneally Racing's argument ignores that it has pleaded, admitted, and described itself as having acted on behalf of the horse owners in arranging Creech's transportation services. Thus, the record shows that, at least with respect to the bills of lading, it was not contracting for itself.

Nor has Kenneally Racing provided the Court with any authority which shows that it can sustain a Carmack Amendment claim. It relies entirely on *OneBeacon Ins. Co. v. Hass Indus., Inc.*, 634 F.3d 1092 (9th Cir. 2011). In that case, the court held that an insurer had standing to bring a Carmack Amendment claim based on an insured's lost cargo even though the insured was not expressly named in the bill of lading. The court reached that conclusion based on the fact that the insured's ownership interests were subrogated to its insurer. No like facts have been presented to the Court in connection with the instant motion. Kenneally Racing did not allege or argue that the horse owners assigned their rights to it or that there is any sort of indemnification agreement that might confer a right to recover the value of the lost or damaged cargo.

---

[6] *See* Bills of Lading, DN 135-1, at PageID# 1714, 1715.

Moreover, contrary to Kenneally Racing's argument, the existence of an enforceable bill of lading is not the decisive factor. This is true because the applicability of the Carmack Amendment does not depend on the existence of a bill of lading. Yes, a bill of lading is "the basic transportation contract between the shipper-consignor and the carrier." *S. Pacific Transp. Co. v. Com. Metals Co.*, 456 U.S. 336, 342 (1982). However, a bill of lading "is not necessary to impose liability" under the Carmack Amendment. *CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd.*, 747 F.3d 339, 355 (6th Cir. 2014). Defendants have made this point and they are correct. Further, while the Carmack Amendment anticipates and contains a requirement that the initial carrier issue a bill of lading, that "is not a requirement to form an actual contract . . . ; it is a requirement that the initial carrier issue the shipper a receipt for the cargo as acknowledgment of the constructive contract making that carrier solely liable to the shipper for the entire carriage." *Id.*

In short, Kenneally Racing has not presented the Court with record evidence or law which shows that it falls within the class of plaintiffs who have a cause of action under the Carmack Amendment. Rather, the undisputed facts show that Kenneally Racing occupied a position akin to a transportation broker. It arranged for the horses' transportation by Creech on behalf of the horses' owners. As a result, it is not within the class of plaintiffs who have a cause of action under the Carmack Amendment. *Exel, Inc.,* 807 F.3d at 148–49. Thus, Defendants are entitled to a summary judgment to the extent Kenneally Racing contends it has a Carmack Amendment claim. FED. R. CIV. P. 56 (a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.").

At the same time, the parties' briefs do not sufficiently address whether Kenneally Racing may have a viable claim under a different theory of liability. Defendants cursorily contend that the Carmack Amendment preempts "the Plaintiffs" claims, but they do not differentiate Kenneally

Racing from its co-plaintiff horse owners. Nor have Defendants presented a developed argument with respect to Kennelly Racing's state law claims in light of the fact it was not a shipper/owner. *See* Memorandum of Law, DN 128-2, at PageID# at 1397. Courts have held that the Carmack Amendment preempts common law claims brought by a cargo owner. Cases cited elsewhere in Defendants' brief stand for that proposition. For example, *Progressive Rail, Inc. v. CSX Trans., Inc.*, 2018 WL 1526331 (E.D. Ky. Mar. 28, 2018) concerned damage to electrical transformers. The court held that the shipper-owner's state law claims were preempted by the Carmack Amendment. *Id.* at *6.

Similarly, in *Val's Auto Sales & Repair, LLC v. Garcia*, 367 F. Supp.3d 613 (E.D. Ky. 2018), the court dismissed state-law claims based on damage to a Mercedes Benz vehicle which occurred when the vehicle, which was a top a flatbed, collided with the bottom of a bridge, the driver having miscalculated the clearance. *Id.* at 616. The court dismissed the plaintiff cargo-owner's state-law negligence claims because they were based on damage to the cargo, finding that they were preempted by the Carmack Amendment. *Id.* at 620. Similarly, in *McCarthy v. Krupp Moving & Storage II, LLC*, 2024 WL 3413255 (S.D. Ohio Jul. 15, 2024), the court dismissed the shipper-owner's state law claims that were based on the carrier's failure to deliver certain household belongings, but allowed the owner to bring a state-law claim for damage to a tree into which the moving van collided while backing up. *Id.* at *5 (damage to tree was "sufficiently separate and apart from the regulation of the interstate shipment of goods that it falls outside the zone of preemption.").

Notably, in *Exel*, 807 F.3d 140, the plaintiff-broker attempted to sue the carrier for breach of a transportation services agreement after about $8 million in pharmaceutical products were lost when the truck carrying them was stolen. In that case, the broker never suffered any financial loss because it never paid its customer for the lost goods and there was no proof of an indemnification

agreement. The actual value of the lost goods was the only measure of damages sought by the broker. Thus, the Sixth Circuit Court of Appeals held that the broker did not have Article III standing to sue for breach of the transportation agreement between it and carrier, having failed to allege an injury-in-fact as a result the alleged breach. *Id.* at 147-48. The carrier also argued that the breach of contract claim failed because the Carmack Amendment preempted it. The court declined to decide the preemption issue. *Id.* at 148.

The other cases on which Defendants have relied stand for the proposition that an entity who has an interest in the damaged or lost cargo has standing to bring a Carmack Amendment claim. They do not address the present the circumstances. *Western Express, Inc. v. Villanueva*, 2017 WL 4785831 (M.D. Tenn. Oct. 24, 2017) concerned who bore financial responsibility for a misdelivered shipment. *Id.* at *1. Western Express, as transportation broker, hired a carrier to deliver products for Western's client. The products never arrived at their destination. Western paid its client for the loss and took an assignment of the claim. Based on the assignment, Western was permitted to sue pursuant to the Carmack Amendment. The court held that the assignment mooted the carrier's motion to dismiss for lack of statutory standing. *Id.* at *4. In *Great West Cas. Co.*, 605 F. Supp.2d 955, the court held that the shipper-owner's insurer had standing to bring a Carmack Amendment claim for the loss of 16,000 pounds of beef: "The sole interest holder is American Foods, as the shipper, whose rights are subrogated to Great West. Therefore, Great West has standing to bring a claim under the Carmack Amendment." *Id.* at 965.

Unlike the plaintiffs in those actions who pursued the value of the lost cargo itself, in this case, Kenneally Racing seeks training fees and commissions it would have allegedly earned from sales and racing. Kenneally Racing argues that it has Article III standing to seek these losses because they represent a direct injury to it. Response, DN 133, at PageID# 1508-09. Defendants' rebuttal to this contention misses the mark. They argue that lost revenue damages are not

recoverable under the Carmack Amendment, citing the statute for this assertion. Reply, DN 135, at PageID# 1710-11 (citing 49 U.S.C. § 140706(a)(1)). They do not develop an argument for this contention or cite any decisions to support it. *Id.* Perhaps Defendants are correct. However, their argument does not address whether Kenneally Racing's alleged damages would be recoverable under a different theory of liability based on different record evidence.

It may be that the uncertainty arises from Defendants having filed their motion before discovery had concluded. Thus, it may also be that the next round of dispositive motions which have been filed after discovery has closed will squarely present and address this issue. With respect to the instant set of briefs, however, the Court has not been sufficiently advised as to whether Kenneally Racing is wholly barred from suing Creech and Landmeier for its lost training revenue and commissions. To the extent that Defendants have implied that the Court should make such a ruling either explicitly or implicitly, the Court declines to do so on the record presented to it at this juncture. Accordingly, the Court will grant Defendants' Motion for Summary Judgment to the extent it seeks a judgment in their favor with respect to any Carmack Amendment claim that Kenneally Racing may purport to possess but it will not dismiss Kenneally Racing from this action.

September 11, 2026



**Charles R. Simpson III, Senior Judge**
**United States District Court**